Peter POTENZA, Clifford Aversano, Plaintiffs–Appellants,

v.

CITY OF NEW YORK, Defendant–Appellee.

Docket No. 01–9351.

United States Court of Appeals, Second Circuit.

Argued: Jan. 21, 2004.

Decided: April 23, 2004.

Barbara Matthews, St. James, New York, for Plaintiff–Appellant.

Drake A. Colley (Edward F.X. Hart, of counsel), for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, for Defendant–Appellee.

Before: KATZMANN, and B.D. PARKER, Circuit Judges PRESKA, District Judge.[1]

PER CURIAM:

Plaintiff Peter Potenza appeals from a grant of summary judgment in favor of defendant New York City Department of Transportation ("DOT") on his claims of nationality and disability discrimination by the United States District Court for the Southern District of New York (Sidney H. Stein, *District Judge*). The majority of Potenza's arguments are addressed in an accompanying summary order. We write separately, however, to set forth a standard for evaluating employees' claims of retaliation for taking leave protected under the Family and Medical Leave Act ("FMLA").

1. The Honorable Loretta A. Preska, of the United States District Court for the Southern

## I.  BACKGROUND

Plaintiff Peter Potenza long worked for the DOT in various capacities at the Staten Island Ferry. For many years he received exemplary performance reports. In 1998, Potenza was promoted to the position of port engineer, which allowed him to assume managerial responsibilities. Patrick Ryan was then reinstated as port captain in June of 1999, and, in conjunction with Director of Ferry Operations Pamela Cess, within two months removed Potenza from his job.

Potenza brought suit, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, state and local human rights laws, the Rehabilitation Act, and the FMLA. The plaintiff claimed, *inter alia*, that the adverse employment action was taken because he had indulged in a one-month medical leave to have surgery on his knee and because he had requested accommodation for the ensuing physical therapy. The DOT insisted instead that it had removed Potenza from his position because of poor job performance and because it was more efficient to locate the port managers within the operations department, rather than the maintenance department from which Potenza had come. The district court granted summary judgment in favor of the DOT. This appeal followed.

## II.  ANALYSIS

The district court, in granting summary judgment for the DOT on Potenza's claim under the FMLA, explained that "there are no set guidelines to establish a prima facie case for wrongful termination under the [FMLA]." *Potenza v. City of N.Y. Dep't of Transp.*, No. 00 Civ. 0707, 2001

District of New York, sitting by designation.

WL 1267172 at *9, 2001 U.S. Dist. LEXIS 17112 at *27 (Oct. 23, 2001). The court nevertheless granted summary judgment in favor of the defendant on the grounds that Potenza was "asking for greater job protection than he would have received had he not taken medical leave" because Potenza "had been back at work for two months before he was removed as a port engineer," and because "Aversano, who did not take a medical leave, was also removed from the position." *Id.* Both of the factual considerations adduced by the district court—the amount of time that elapsed between the plaintiff's FMLA-protected leave and the treatment of other similarly situated employees—speak more to the connection between Potenza's FMLA leave and the adverse employment action than to whether he was asking for greater job protection than he would otherwise have received. We therefore write to clarify the burden that plaintiffs must shoulder in demonstrating that they suffered adverse employment actions in violation of the FMLA and to place the district court's comments within the framework that we establish.

Potenza's complaint is properly read as alleging that the DOT interfered with his rights or retaliated against him for taking FMLA-protected medical leave. *See* Compl. ¶ 86 ("Defendant violated plaintiff's rights under the FMLA, when it demoted plaintiff Potenza because he took the protected medical leave under the FMLA."). Section 2615(a)(1) of the FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The regulations promulgated pursuant to the FMLA explain that " '[i]nterfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA

leave, but discouraging an employee from using such leave," 29 C.F.R. § 825.220(b), and that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." 29 C.F.R. § 825.220(c). This Circuit has not settled upon a standard to use when evaluating employees' claims that they were punished for exercising their rights under the FMLA. *See Sabatino v. Flik Int'l Corp.*, 286 F.Supp.2d 327, 339 (S.D.N.Y.2003). Two approaches have prevailed in other circuits and in the district courts within this Circuit. One insists on extending the *McDonnell Douglas* approach to claims pursuant to § 2615(a)(1). *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791 (11th Cir.2000) ("When evaluating a claim of retaliation under the FMLA, in the absence of direct evidence of discrimination on the part of the employer, we apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green* for evaluating Title VII retaliatory discharge claims.") (internal citation omitted). The other, championed by the Ninth Circuit, emphasizes that violation of § 2615(a)(1) involves *interfering with* the exercise of rights given by the FMLA rather than *retaliating against* those who make use of their rights. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.2001). In *Bachelder*, the Ninth Circuit analogized the relevant FMLA provision with the National Labor Relations Act and concluded:

> In order to prevail on her claim, ... [plaintiff] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both.... No scheme shift-

ing the burden of production back and forth is required. *Id.* at 1125. A case from the Seventh Circuit emphasizes that the difference between the two approaches inheres in the relevance of the employer's intent to the determination of whether or not a violation has occurred. *See King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir. 1999). According to this account, it would be appropriate to apply the *McDonnell Douglas* analysis to claims of retaliation— where the employer's intent is material— but not to assertions of interference— where the question is simply whether the employer in some manner impeded the employee's exercise of his or her right. Because Potenza's case involves retaliation rather than interference, we need not decide whether or not to adopt the Seventh Circuit's analysis in its entirety.

■ In the context of Potenza's claim, the retaliation analysis pursuant to *McDonnell Douglas* is applicable. Potenza appears to be alleging that he was punished for exercising his rights under the FMLA. In order to make out a prima facie case, he must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. The parties do not dispute that Potenza's leave was taken in accordance with the FMLA, and the second and third factors were demonstrated with respect to Potenza's Title VII claim as well.

■ The adverse employment action did not, however, occur under circumstances giving rise to an inference of retaliatory intent. Because the district court was not apprised in advance of what standard we would apply in evaluating claims for retaliation under the FMLA, it did not explicitly follow the steps that we set have set forth. However, the court did explain in a footnote that Potenza's claim would fail if analyzed in accordance with the requirements for establishing a prima facie case articulated in *Oswalt v. Sara Lee Corp.,* 889 F.Supp. 253, 259 (N.D.Miss.1995), which are similar to the ones that we here enumerate. *Potenza,* 2001 WL 1267172 at *9 n. 5, 2001 U.S. Dist. LEXIS 17112 at *27 n. 5. We take the court to mean by this statement that the plaintiff had not satisfied his burden of establishing the fourth prong of a prima facie case—that of retaliatory intent. The fact that a two month delay intervened between Potenza's return to work and his removal as port engineer does not completely vitiate his claim, as the district court could be read as suggesting. *See Potenza,* No. 00 Civ. 0707, 2001 WL 1267172 at *9. Our independent evaluation of the record nevertheless confirms that indicia of retaliatory intent are lacking.

For these reasons, we affirm the district court's grant of summary judgment on Potenza's claim that the DOT retaliated against him for taking FMLA-protected leave.