*Dries v. Smith & Nephew, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of April, two thousand twenty-six.

PRESENT:
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> *Circuit Judges.*

———————————————————————

DANNY DRIES,

> *Plaintiff-Appellant,*

> v.                                            No. 25-925

SMITH & NEPHEW, INC.,

> *Defendant-Appellee.*

———————————————————————

| For Plaintiff-Appellant: | James V. Sabatini, Sabatini and Associates, LLC, Newington, CT. |
|---|---|
| For Defendant-Appellee: | Paula N. Anthony, Littler Mendelson, P.C., New Haven, CT. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Stefan R. Underhill, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 17, 2025 judgment of the district court is **AFFIRMED**.

Danny Dries appeals from the district court's grant of summary judgment in favor of his former employer, Smith & Nephew, Inc., on his claim that Smith & Nephew retaliated against him for attempting to exercise his right to take paternity leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* We review a district court's grant of summary judgment *de novo*, *see Kee v. City of New York*, 12 F.4th 150, 157–58 (2d Cir. 2021), and will affirm only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

2

In analyzing FMLA retaliation claims, courts apply the three-part burden-shifting test first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That test first requires a plaintiff to establish a *prima facie* case of retaliation by demonstrating that (i) he exercised his rights under the FMLA; (ii) he was qualified for the position; (iii) he suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (applying *McDonnell Douglas* test to FMLA retaliation claim). If the plaintiff can make out a *prima facie* case at step one, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016). Where the employer carries that burden at step two, the plaintiff must then prove that the reasons the employer offered were a pretext for retaliation. *See id.* The parties agree that Dries's claims rise and fall with this final question, *compare* Dries Br. at 29, *with* Smith & Nephew Br. at 12: namely, whether Dries has shown that Smith & Nephew's "proffered explanation" for the adverse actions it took – *i.e.* firing him for not adhering to a performance improvement plan ("PIP") – was "pretextual," *Graziadio*, 817 F.3d at 429.

Dries argues that after he requested FMLA leave, Smith & Nephew took adverse actions against him by (i) putting him on a PIP and (ii) firing him twelve days later.   But the record reflects that the PIP was imposed only after Dries:   (i) "took unapproved" time off, J. App'x at 40–41, 100; (ii) "failed to respond to" his supervisor's "text, email[,] and voicemail messages" concerning his whereabouts, *id.* at 41, 113; (iii) repeatedly sought reimbursement for personal, non-business expenses even after his initial requests were denied, *id.* at 40, 98; (iv) provided quotes for unapproved "third party" items alongside Smith & Nephew products to medical providers while using "S&N's logo," *id.* at 41, 259–61; and (v) missed various mandatory conferences and work meetings without permission, *id.* at 39–40, 216, 243–46.

More fundamentally, we have previously observed that actions similar to the mere imposition of a PIP do not rise to the level of an adverse employment action.   *See Weeks v. N.Y. Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001) (concluding that "notice[s] of discipline for misconduct and incompetence," "counseling memo[s]," and "negative job evaluations" "do not establish an adverse employment action for purposes of retaliation" claim under Title VII); *see also, e.g.,* *Brown v. Am. Golf Corp.*, 99 F. App'x 341, 343 (2d Cir. 2004) ("We conclude that

4

being instructed to follow the requirements of the Performance Improvement Plan did not constitute an adverse employment action [under Title VII].").  Though *Weeks* arose in the Title VII context, we have since applied its holding to claims brought under "the FMLA's anti-retaliation provision."  *Davies v. N.Y.C. Dep't of Educ.*, 563 F. App'x 818, 820 (2d Cir. 2014) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011)).  Because a PIP is not on its own the equivalent of "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities," *Weeks*, 273 F.3d at 85, the district court properly concluded that placing Dries on a PIP did not constitute an adverse employment action for purposes of his FMLA retaliation claim, *see Millea*, 658 F.3d at 164.  Indeed, the record clearly reflects that, had Dries complied with the terms of the PIP (something he concedes he did not do), there would have been no effect – much less the "materially adverse" effect required in "the FMLA context," *id.* – on his employment.

Nor has Dries offered any evidence to suggest that his termination twelve days later was retaliatory.  Almost immediately after being placed on the PIP, Dries failed to comply with its basic terms.  Although required to (1)

communicate at least weekly with his supervisor "to discuss activities, performance metrics, plan for the upcoming week, [and] target updates," and (2) provide a weekly activity log "by Friday at 5pm" detailing which cases Dries covered that week, J. App'x at 110–13, the record is clear that Dries had "no communication whatsoever with [his] supervisor from February 26th to March 10th," and that he failed to provide any evidence of his timekeeping while on the PIP, *see* Sp. App'x at 44–45. Noncompliance with these basic reporting requirements, without good cause or even explanation, clearly justified Dries's termination, and Dries has offered no evidence to conclude that the termination was a pretext for retaliation aimed at his prior request for FMLA leave.

\*     \*     \*

We have considered Dries's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6